# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| STEPHANIE MARIE RASMUSSEN, | No. 1:16-cv-03138-MKD |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL | |
| SECURITY, | ECF Nos. 19, 23 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 19, 23. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 19) and grants Defendant's motion (ECF No. 23).

1

**JURISDICTION**

2  The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3  1383(c)(3).

4  **STANDARD OF REVIEW**

5  A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported

8  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

9  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

11  (quotation and citation omitted).  Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

13  citation omitted).  In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation. *Id.*

16  In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on February 2, 2011.[1] In both applications, Plaintiff alleges a disability onset date of August 16, 2006. Tr. 328, 330. The claims were denied initially, Tr. 224-30, and upon reconsideration, Tr. 235-44. Plaintiff appeared at a

_____

[1] A prior hearing was held September 13, 2012, Tr. 38-76, and Plaintiff's claims were denied on November 30, 2012, Tr. 203-13. The case was remanded by the Appeals Council and another hearing was held April 4, 2014. This hearing and resulting decision form the basis of this appeal. The ALJ incorporated the prior decision, Tr. 203-13, as a summary and discussion of the evidence, into the current decision. Tr. 18.

hearing before an Administrative Law Judge (ALJ) on April 4, 2014. Tr. 77-131.

On September 5, 2014, the ALJ denied Plaintiff's claim. Tr. 18-32.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to her disability claim through December 31, 2011. Tr. 20. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, August 16, 2006. Tr. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: depressive disorder, post-traumatic stress disorder, sprains/strains, and obesity. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform a range of light work with the following exceptions and limitations:

> except she can frequently climb ramps or stairs; never climb ladders, ropes or scaffolds; frequent[ly] balance, stoop, and kneel; occasionally crouch and crawl. She needs to avoid concentrated exposure to workplace hazards such as dangerous machinery and unprotected heights. She is limited to simple, routine tasks in a routine work setting. She can have superficial interactions with coworkers, such as giving or receiving directions or asking questions. She can have only incidental contact with the public.

Tr. 26. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as cleaner/housekeeper,

packing line worker, and bakery conveyor line worker.  Tr. 31.  Alternatively, the ALJ found that if the exertional level was reduced to sedentary, and all other aspects of the hypothetical remained the same, there are still jobs in significant numbers in the national economy that Plaintiff could perform, such as assembler, escort vehicle driver, and document preparer.  Tr. 31.  On that basis, the ALJ concluded that Plaintiff has not been disabled as defined in the Social Security Act from onset through the date of the decision.  Tr. 32.

On March 25, 2016, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 19.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ made a proper step two determination;

2.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

3.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 19 at 6.

# DISCUSSION

## A. Step Two

Plaintiff contends that the ALJ improperly failed to identify avoidant personality disorder as a severe impairment at step two. ECF No. 19 at 6-8.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908 (2016).[2]

An impairment may be found to be not severe when "medical evidence established only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work

_____

[2] As of March 27, 2017, the regulation was amended. The ALJ rendered his decision on September 5, 2014, thus, the Court applies the version effective at the time the decision was rendered.

activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a) (2016), S.S.R. 85-28.[3]

The ALJ found that Plaintiff had the following severe mental impairments: depressive disorder and post-traumatic stress disorder (PTSD). Tr. 21. The ALJ did not find that avoidant personality disorder is a severe impairment in the current decision. In the first decision, the ALJ found depression, PTSD and "a personality disorder" were severe impairments. Tr. 205.

In contending that personality disorder is a severe impairment, Plaintiff contends the ALJ erred by ignoring the opinion of Aaron Burdge, Ph.D., and improperly rejecting the opinion of Brett Wenger, M.S. ECF Nos. 19 at 6-8, ECF

_____

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). As of March 27, 2017, the regulation was amended. The ALJ rendered his decision on September 5, 2014, thus, the Court applies the version effective at the time the decision was rendered.

No. 24 at 1-6 (Plaintiff's contentions with respect to additional medical opinion

evidence is discussed *infra*).

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id*. "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

### 1. Dr. Burdge

Dr. Burdge, an examining psychologist, performed an evaluation in January

2012. Tr. 798-808. Dr. Burdge's diagnosis included personality disorder, not

otherwise specified (NOS), with learned helplessness and dependent features. Tr.

798.

Plaintiff contends the ALJ erred by ignoring Dr. Burdge's opinion. ECF No.

19 at 20 (citing Tr. 798). Plaintiff contends that had the ALJ accepted this

diagnosis, the ALJ would have found personality disorder a severe impairment at

step two, which would have also led the ALJ to give greater credit to the opinion of

treating therapist Brett Wenger, M.S. ECF Nos. 19 at 20, ECF No. 24 at 1-6.

The Court notes Plaintiff's initial argument, that the ALJ ignored Dr.

Burdge's opinion, is incorrect. Although the ALJ did not discuss Dr. Burdge's

opinion in the current decision, the ALJ thoroughly discussed it in the prior

decision that was incorporated by reference. Tr. 18 (citing Tr. 203-13). In the

prior decision, the ALJ gave significant weight to the portion of Dr. Burdge's

assessment indicating that Plaintiff had no more than moderate limitations in cognitive and social functioning.  Tr. 210 (citing Tr. 799, 808).

First, with respect to cognitive functioning, as the ALJ found, Dr. Burdge assessed Plaintiff's ability to understand and remember short, simple directions, and to understand and remember detailed instructions, as good.  Tr. 210 (citing Tr. 808).  The ALJ further found that Dr. Burdge assessed Plaintiff's ability to sustain an ordinary routine without supervision, work with or near others without being distracted by them, and respond appropriately to changes in the work setting, as good.  Tr. 210 (citing Tr. 808).  The ALJ credited these findings.  Tr. 210.

With respect to social functioning, the ALJ credited Dr. Burdge's opinion that Plaintiff's social functioning was fair to good or good.  Tr. 210 (citing Tr. 808).  The ALJ also accepted Dr. Burdge opinion that Plaintiff's ability to interact appropriately with the public was fair to good, his that opinion Plaintiff's ability to get along with coworkers and peers was good, and his opinion that Plaintiff's ability to respond appropriately to criticism from supervisors was good.  Tr. 210 (citing Tr. 808).

However, the ALJ gave limited weight to Dr. Burdge's opinion that Plaintiff was unable to sustain full-time work related activities.  Tr. 210 (citing Tr. 808).  Dr. Burdge opined that given Plaintiff's response to treatment and willing participation, "a period of 3-6 months may likely be sufficient" to address

Plaintiff's treatment needs at least moderately well, and help her regain the

necessary emotional functioning to resume fulltime work related activities.[4]  Tr.

210 (citing Tr. 800, 808).

Because Dr. Burdge's opinion was contradicted by reviewing psychologists

Patricia Kraft, Ph.D., Tr. 151-57, and John Wolf, Ph.D.,[5] Tr. 186-96, the ALJ was

required to provide specific and legitimate reasons for rejecting Dr. Burdge's

opinion.  *Bayliss*, 427 F.3d at 1216.

---

[4] Although not noted by the ALJ, Dr. Burdge also opined that Plaintiff should be

able to work at least 20 hours a week initially, and more if her therapist felt she

was ready, perhaps indicating less severe limitations.  Tr. 808.

[5] On May 13, 2011, Dr. Kraft reviewed the record, diagnosed anxiety and affective

disorder, and opined Plaintiff was limited to superficial public contact and should

work independently with limited coworker interaction.  Tr. 201 (citing Tr. 157).

On August 23, 2011, Dr. Wolfe reviewed the record and agreed with Dr. Kraft's

opinion.  Tr. 210 (citing Tr. 194).  In the ALJ's first decision, she assigned these

opinions significant weight.  Tr. 210.  In the second decision, the ALJ adopted the

consultants' diagnoses, Tr. 25 (citing Tr. 186), and gave their opinions "great

weight," with one exception: the ALJ limited Plaintiff to "incidental" public

contact, and limited Plaintiff's interaction with co-workers to superficial.  Tr. 30.

1    First, the ALJ rejected Dr. Burdge's more dire assessed limitations because

2  his opinion was not supported by objective findings.  Tr. 210.  An ALJ may

3  discredit physicians' opinions that are unsupported by the record as a whole or by

4  objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190,

5  1195 (9th Cir. 2004).  The ALJ relied on Plaintiff's generally benign results on

6  examinations, including mental status examinations.  Tr. 210.  Here, the ALJ noted

7  in the first decision that Plaintiff's results on MSEs and upon examination were

8  largely normal, contradicting Dr. Burdge's opinion that Plaintiff was unable to

9  sustain full time employment.  Tr. 207, 210.  For example, the ALJ noted that in

10  January 2009, MSE results at an examination by Leslie Thompson, M.A., and

11  Dawn Petre, M.Ed., revealed Plaintiff had average intellect, intact cognition, and

12  good memory.  Tr. 207 (citing Tr. 460).  The ALJ further noted, as another

13  example, that in December 2010, Steve Warn, M.A., and Harry Kramer, Ph.D.,

14  assessed Plaintiff's cognitive functioning as intact.  Tr. 207 (citing Tr. 475).  As

15  yet another example, the ALJ additionally noted that at an examination March 1,

16  2011, upon mental status examination, Crystal Coffey, Pharm. D., found Plaintiff

17  had no abnormal motor activity; in addition, Ms. Coffey found Plaintiff was alert,

18  oriented, and cooperative; speech was normal and memory and intellect were

19  grossly intact; moreover, the ALJ further noted, Plaintiff's insight and judgment

20  were rated as good.  Tr. 209 (citing Tr. 453).  Significantly, the ALJ noted that

following Ms. Coffey's exam, there was no evidence of any change in Plaintiff's condition, such as worsening. Tr. 209. The ALJ found, for example, that March 29, 2012 records from treating primary care physician Sara Cate, M.D., revealed Plaintiff was fully oriented with normal insight, normal judgment, and appropriate mood and affect. Tr. 209 (citing Tr. 846). The ALJ relied on objective findings that contradicted assessed severe limitations. Tr. 209. This was a specific, legitimate reason to give limited weight to Dr. Burdge's more dire assessed limitations.[6]

———————————

[6] In the recent decision, the ALJ also found largely benign examination findings; these would also contradict Dr. Burdge's more dire assessed limitations although the ALJ did not discuss them in that context. The ALJ noted, for example, treatment provider Paula Lins, PAC, found in March 2013 that Plaintiff was alert, oriented, pleasant, appropriate and in no distress. Tr. 21 (citing Tr. 858). The ALJ further noted that in November 2013, after Plaintiff had her baby in October 2013, Ms. Lins noted Plaintiff reported that her moods were doing well; Plaintiff again was pleasant and in no distress; significantly, Plaintiff reported she rarely used pain medications; Ms. Lins opined Plaintiff was doing extremely well. Tr. 21 (citing Tr. 852). The ALJ also noted in January 2014, treating physician John Sand, M.D., noted Plaintiff was alert, oriented and pleasant, and in March 2014, Dr. Cate noted

Second, the ALJ found Plaintiff's independent daily activities were inconsistent with Dr. Burdge's opinion that Plaintiff was unable to work full time. Tr. 210. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ found in the first decision that Plaintiff's functioning was inconsistent with Dr. Burdge's more dire assessed limitations. Tr. 210. The ALJ found, for example, Plaintiff testified at the first hearing that she finished her GED in 2010. Tr. 206, 210. The ALJ further found, as another example, that after she earned her GED, Plaintiff began working part-time as a teacher's aide through the WorkSource program, although this job ended when Plaintiff eventually stopped going to work. Tr. 210 (citing Tr. 46). Notably, the ALJ also pointed out, as another example, that Plaintiff testified at the first hearing that her son was in first grade and she had cared for him as a single parent since 2006. Tr. 210 (citing Tr. 50). The ALJ additionally found that Plaintiff testified her son was in daycare for the approximately six months that it took her to earn her GED, Tr. 206 (citing Tr. 50), indicating prior to that time she provided full time care for him. As still

_____

Plaintiff described her exercise program as fun and she reported that she was going to the zoo in Seattle that day; Plaintiff's aspect was bright and she felt hopeful. Tr. 21-22 (citing Tr. 851, 882-83).

more examples, the ALJ further pointed out Plaintiff told examining source Crystal Cox, Pharm. D., (apparently also known as Crystal Coffey) that she had been able to push herself to attend social events but had difficulty, despite allegedly disabling anxiety symptoms, Tr. 206, 209 (citing Tr. 455).

The ALJ additionally relied on Plaintiff's self-reported activities. Tr. 206. In September 2011, Plaintiff's self-report indicated she took care of her personal needs and cared for her five-year old son. Plaintiff reported this meant that she fed and bathed him, got him into and out of bed on time, and ensured that he went to school. Tr. 206 (citing Tr. 388). The ALJ found Plaintiff further reported she cooked and maintained her small apartment; at her own pace, Plaintiff vacuumed and did dishes and laundry. The ALJ further found Plaintiff reported that although she preferred to be accompanied, she was able to go outside alone. Tr. 206 (citing Tr. 389-90). Plaintiff also reported, as additional activities noted by the ALJ, that she drove, shopped every week or two, played with her son and spent time with him daily; and Plaintiff liked to sing by herself and read when she had time. Tr. 206 (citing Tr. 390-91). The ALJ further observed, as still more activities, Plaintiff reported she regularly took her son to school, sometimes took him to the park and occasionally visited her mother (citing Tr. 391); Plaintiff testified at the first hearing that she struggled with housework but said that she did it for her son (citing Tr. 51); further testified she continued to cook, did laundry, drove, saw her

friends about once a month, and enjoyed reading when she could.  Tr. 206 (citing Tr. 51-53).  The ALJ found Plaintiff's independent activities and social interaction inconsistent with severe limitations.  Tr. 209.  This was a specific, legitimate reason to give limited weight to Dr. Burdge's more dire assessed limitations.

Third, the ALJ gave Dr. Burdge's more severe assessed limitations little weight because they appeared to be largely based on Plaintiff's unreliable self-report.  Tr. 210.  A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Here, because Dr. Burdge's assessed severe limitations were contradicted by largely benign objective findings and by Plaintiff's actual functioning, the ALJ concluded that Dr. Burdge's more severe limitations must have been more heavily based on Plaintiff's complaints, which were properly discounted, than on clinical observations, as discussed *infra*.  Tr. 210.  This was a specific and legitimate reason to give limited weight to Dr. Burdge's opinion that Plaintiff was unable to sustain full-time work related activities.

1        *2.  Mr. Wenger*

2        Plaintiff next alleges the ALJ erred at step two by rejecting the 2014

3   diagnosis of personality disorder made by treating therapist Brett Wenger, M.S.,

4   because he is not an "acceptable source."  ECF No. 19 at 7, ECF No. 24 at 2-3.

5        As a non-physician, Mr. Wenger is an "other source" under the regulations.

6   20 C.F.R. § 404.1513(d) (2013).  Thus, the ALJ was required to cite germane

7   reasons for rejecting his opinion.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

8   1993).

9        In February 2014, treatment provider Mr. Wenger diagnosed post-traumatic

10  stress disorder, major depressive disorder, and avoidant personality disorder.  Tr.

11  24 (citing Tr. 896, 920-21).  As noted, in the current decision, the ALJ did not find

12  personality disorder is a severe impairment.

13       Because Mr. Wenger is a social worker, as noted, the ALJ correctly found

14  that Mr. Wenger is not an acceptable medical source under the regulations.  20

15  C.F.R. § 416.927(a)-(f).  Further, as a non-acceptable source cannot make a

16  diagnosis, the ALJ was not required to accept the diagnosis by Mr. Wenger of

17  avoidant personality disorder; rather, the ALJ was required to give germane

18  reasons for rejecting Mr. Wenger's opinion.

19       Here, the ALJ did not reject Mr. Wenger's opinion solely because he is a

20  non-acceptable source, as Plaintiff contends.  Instead, the ALJ first rejected Mr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

Wenger's opinion because it was inconsistent with the record as a whole. Tr. 29.

The consistency of a medical opinion with the record as a whole is a relevant factor

in evaluating that medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

2007); *see also Batson,* 359 F.3d at 1195 (ALJ may discredit treating physicians'

opinions that are conclusory, brief, and unsupported by the record as a whole or by

objective findings). The ALJ found, for instance, that in April 2014, Mr. Wegner

opined Plaintiff had extreme difficulty with social functioning and could not

engage in such activities as going shopping. Tr. 29 (citing Tr. 988). The ALJ

noted, however, that in actuality, Plaintiff went shopping, as well as to the park, to

the zoo, and to friends' homes. Tr. 30; *see, e.g.,* Tr. 52 (at the first hearing Plaintiff

testified she saw her friends about once a month); Tr. 390-91 (in September 2011

Plaintiff's self-report stated she shopped and went to the park). This was a

germane reason to give Mr. Wenger's opinion limited weight.

Second, the ALJ rejected Mr. Wenger's because it was inconsistent with his

own records. Tr. 30. A "discrepancy" between a treating provider's clinical notes

and that provider's medical opinion is an appropriate reason for the ALJ to not rely

on that provider's opinion regarding the claimant's limitations. *Bayliss,* 427 F.3d

at 1216. Here, the ALJ pointed out that Mr. Wenger's records show that one of

Plaintiff's reported strengths is a strong social support system. Tr. 30 (citing Tr.

896) (on February 13, 2014, Mr. Wenger's records reflect under "strengths" that

Plaintiff "has a strong social support system.") The ALJ found this was contradicted by Mr. Wenger's statement that Plaintiff habitually avoided all types of social and interpersonal interactions and was impaired in her occupational functions due to fears of seeming inferior, being embarrassed or negatively judged. Tr. 29-30 (citing Tr. 897) (Mr. Wenger's February 13, 2014 treatment note). Plaintiff could both have a strong social support system but not use it. The Court finds this was not a germane reason for giving Mr. Wenger's opinion limited weight.

Third, the ALJ rejected Mr. Wenger's opinion to the extent it appeared to be based on Plaintiff's less than fully credible self-report. Tr. 29 (citing Tr. 897, 988). A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan,* 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. Here, because the ALJ found Mr. Wenger's opinion was inconsistent with the record as a whole, the ALJ reasonably concluded that Mr. Wenger's opinion must have been more heavily based on Plaintiff's complaints, which were properly discounted, than on clinical observations. This was a germane reason to give limited weight to Mr. Wenger's opinion.

The ALJ gave germane reasons for giving Mr. Wenger's lay testimony limited weight. Although the ALJ considered a reason that was not germane, the

ALJ cited other germane reasons supported by the evidence which supports the

ALJ's rejection of Mr. Wenger's opinion. *See, e.g., Morgan*, 169 F.3d 595, 601-02

(9th Cir. 1999). Therefore, the outcome is the same despite the improper

reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v.*

*Astrue*, 481 F.3d 742, 747 (9th Cir. 2007), *Curry v. Sullivan*, 925 F.2d 1127, 1131

(9th Cir. 1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380

(9th Cir. 1984).

Without citation to authority, Plaintiff contends because the ALJ found

personality disorder was a severe impairment at step two in her prior decision, ECF

No. 19 at 7 (citing Tr. 205, 210), the ALJ erred by failing to adopt personality

disorder as a severe impairment in the current decision. As set forth above, the

ALJ reasonably interpreted the medical evidence which led to the ALJ's

conclusion.

Moreover, since step two was resolved in Plaintiff's favor, even if an error

occurred, it is harmless if the ALJ continues beyond step two and considers

relevant limitations at step four. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir.

2007). Here, the ALJ considered Plaintiff's psychological impairments at step

four, and assessed the limitations the ALJ found established by the evidence in the

RCF. Tr. 26. The ALJ is responsible for translating and incorporating clinical

findings into a succinct RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008). The ALJ's RFC limited Plaintiff to simple, routine tasks in a routine work setting, limited Plaintiff's interactions with coworkers to superficial contact, and limited Plaintiff's contact with the public to incidental. Tr. 26. Plaintiff does not show how personality disorder, specifically, resulted in limitations beyond those the ALJ included in the RFC.

Furthermore, "[t]he mere diagnosis of an impairment . . .is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.3d 1545, 1549 (9th Cir. 1985). The Court addressed the ALJ's discussion of the limitations assessed by Dr. Burdge and found no error. The ALJ did not err in failing to accept Dr. Burdge's 2012 diagnosis of personality disorder as a severe impairment at step two because the ALJ considered all of the limitations Dr. Burdge assessed, and continued beyond step two with the sequential evaluation process.

In the context of arguing that the ALJ's error at step two led to an incomplete RFC, Plaintiff contends the ALJ should have included a limitation on Plaintiff's contact with supervisors, a limitation Plaintiff alleges is caused by personality disorder. ECF No. 19 at 7-8. However, the only authority Plaintiff cites for this contention is a statement by treating therapist Steven Warn, M.A. (Tr. 850) (Mr. Warn referred to Plaintiff's past traumatic workplace experiences). This is not sufficient evidence to establish a limitation the ALJ was required to include in the RFC. Importantly, in the current decision, the ALJ explicitly stated that the

RFC (restricting Plaintiff to routine work with limitations in social interaction) accommodates any limitations from Plaintiff's combined mental impairments *including possible personality disorder*. Tr. 25 (emphasis added). Thus, the ALJ explicitly acknowledged that she incorporated any limitations from possible personality disorder into the RFC even though it was included as a severe impairment at step two.

Plaintiff makes no showing that the condition of personality disorder creates limitations not already accounted for in the RFC. Thus, the ALJ's step two finding with respect to mental impairments, and the assessment of the opinion of Dr. Burdge and Mr. Wenger, are legally sufficient.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 19 at 8-15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it

could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

determination with findings sufficiently specific to permit the court to conclude

that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (quoting *Moore v. Comm'r of Soc.*

*Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons

for finding that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms "are not entirely credible." Tr. 27.

*1. Inconsistent Statements*

In support of the credibility finding, the ALJ identified Plaintiff's

inconsistent statements. Tr. 27. In evaluating the credibility of symptom

testimony, the ALJ may utilize ordinary techniques of credibility evaluation,

including prior inconsistent statements. *See Smolen v. Chater*, 80 F.3d 1273, 1284

(9th Cir. 1996). Here, the ALJ first identified inconsistencies in Plaintiff's

testimony. Tr. 27. For example, the ALJ found Plaintiff initially testified that she

did not know the identity of her second child's father because she met three

different men online, slept with each of them, and only slept with each man once.

Tr. 27 (citing Tr. 94). As the ALJ further noted, when asked follow up questions,

Plaintiff contradicted her earlier testimony. Tr. 27. Plaintiff admitted she actually

did know one of the three men, she did not meet him online, and she was with him

more than once. Tr. 27 (citing Tr. 95, 98-99). The ALJ further found that at a

psychiatric evaluation in June 2013, Plaintiff told Jamie Mackie, ARNP, she was

currently trying to end a relationship with the man who may be the father of the

child she was carrying; he was married and she had been seeing him for four years; in addition, Plaintiff told Ms. Mackie she had dated another man recently who might also be the father. Tr. 27 (citing *e.g.*, Tr. 947-49). The Court finds it was reasonable for the ALJ to consider Plaintiff's inconsistent statements in her testimony and between her testimony and statements to providers when making the adverse credibility finding.

Similarly, in the prior decision incorporated by reference, Tr. 18, the ALJ considered Plaintiff's inconsistent statements when she assessed credibility. Tr. 209. For instance, in the prior decision the ALJ noted Plaintiff testified at the hearing in 2012 that she had not taken psychotropic medication for eight months because it was not providing significant relief and was causing adverse side effects. Tr. 209. Plaintiff testified she had taken Prozac and she became upset or cried for no reason and did not really like the way it made her feel, so she had stopped taking it on her own about eight months before the 2012 hearing. Tr. 209 (citing Tr. 55-56). However, as the ALJ further found, the medical evidence did not corroborate Plaintiff's claim that she experienced adverse side effects. Tr. 209. The ALJ pointed out that the evidence did not reflect that Plaintiff described any negative side effects to treatment providers. Tr. 209. In both decisions the ALJ relied on Plaintiff's inconsistent statements when she assessed credibility. This

was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

On appeal Plaintiff contends the ALJ's focus in the current decision on Plaintiff's personal life improperly relied on non-medical factors for determining whether her claims are credible. Plaintiff's sole support for this contention is S.S.R. 16-3p. ECF No. 19 at 12. However, this ruling went into effect after the ALJ's current decision in this case. Social Security Ruling 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016, and the ALJ rendered her current decision on September 5, 2014. Tr. 32. Although the new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms, S.S.R. 16-3p at *6, nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision on September 5, 2014, and therefore does not apply in this case. Moreover, the ALJ relied on more than Plaintiff's statements at the second hearing. As noted, the ALJ also relied on Plaintiff's statements to providers (specifically, the lack thereof with respect to medication side effects) that were inconsistent with her testimony at the first hearing. As Plaintiff does not challenge this finding, the argument is waived. On that basis alone, the ALJ's reason for finding Plaintiff less than credible was clear, convincing and supported by substantial evidence.

Because the ALJ properly relied on Plaintiff's inconsistent testimony and statements in both decisions, the ALJ provided a clear and convincing reason for finding Plaintiff less than credible.

### 2. Daily Activities

Next, in the current decision, the ALJ found with respect to daily activities that Plaintiff has minimized the outside contacts she has with people and the activities that she engages in with them. Tr. 27. In the first decision, the ALJ similarly found Plaintiff's independent activities and social interaction are inconsistent with Plaintiff's allegations of disabling anxiety and other limitations. Tr. 209. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ found that Plaintiff's activities were varied and inconsistent with claimed disabling limitations. Tr. 27-28. The ALJ found, for example, that at the current hearing, Plaintiff testified her activities included caring for her seven-year old and five-month old sons[7] as a single parent. Tr. 27 (citing Tr. 83). The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. However, the Ninth Circuit has recently clarified that an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations. *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017) (considering the ability to provide childcare in the context of discrediting a treating physician's opinion rather than a claimant's credibility). In *Trevizo*, the Ninth Circuit noted that, although the ALJ repeatedly pointed to the claimant's responsibilities caring for her young adoptive children as a reason for rejecting her disability claim, the record provided no details as to what Trevizo's regular childcare activities involved. *Id.* The Ninth Circuit held that absent specific details about Trevizo's

_____

[7] Plaintiff gave birth to her second child, also a son, in October 2013, in between the two hearings. Tr. 21 (citing Tr. 852).

childcare responsibilities, those tasks cannot constitute "substantial evidence" inconsistent with the treating physician's opinion; thus, the ALJ improperly relied on claimant's childcare activities to reject the treating physician opinion. *Trevizo*, 862 F.3d at 998. Here, there are some details about Plaintiff's childcare responsibilities, including that, with respect to her older child, she prepared meals, took him to the park, bathed him, played games with him, and got him to school on time. Tr. 27 (citing Tr. 88); Tr. 206 (citing Tr. 388-89). These details, combined with the other activities cited by the ALJ, undermine Plaintiff's symptom claims.

The ALJ considered other activities in addition to child care. The ALJ found in the current decision that Plaintiff drove fairly long distances and was able to manage urban traffic; she socialized with friends and went to friends' homes; Plaintiff went to the zoo in Seattle with her mother; and, in addition, Plaintiff had signed up for online dating websites and arranged to meet and met men through these websites. Tr. 27, 30 (citing Tr. 87-89). Further, the ALJ found Plaintiff reported she played games with her seven-year old son, took him to the park on good days, went to the grocery store, prepared meals, and visited family. Tr. 27 (citing Tr. 88-89). The ALJ found Plaintiff's activities were varied and inconsistent with allegedly total disability. Tr. 28.

Similarly, in the prior decision, the ALJ found Plaintiff's independent activities and social interaction were inconsistent with allegedly disabling anxiety

and other limitations. Tr. 206, 209. The ALJ found, for instance, that in March 2011, Plaintiff told examiner Dr. Cox that she attended social events despite her symptoms. Tr. 206, 209 (citing Tr. 455). The ALJ further found that in September 2011, Plaintiff's self-report indicated she cared for her five-year old son, including her report that she fed and bathed him, got him into and out of bed on time, and ensured he went to school; Plaintiff further reported she cooked, maintained her small apartment, vacuumed and did laundry and the dishes at her own pace, went outside alone, drove, shopped every week or two, enjoyed spending time and playing with her son daily, and liked to sing by herself and read when she had time. Tr. 206 (citing Tr. 387-91). The ALJ additionally found Plaintiff testified she struggled with housework but did it for her son. Tr. 206 (citing Tr. 51). Moreover, the ALJ also found Plaintiff further testified that she cooked, did laundry, drove, visited friends about once a month, and had earned her GED. Tr. 206-07 (citing Tr. 50-52). The ALJ reasonably concluded Plaintiff's daily activities were inconsistent with her claims of disabling social and mental limitations. This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Ability to Work with Impairments

The ALJ found in the first decision that Plaintiff worked for years despite a long history of mental health symptoms. Tr. 209; *see, e.g.,* Tr. 212 (the ALJ found

Plaintiff has past relevant work as a cashier, fast food worker and customer service clerk). Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

Specifically, the ALJ found that Plaintiff has a long history of mental health symptoms, but was nonetheless able to work. Tr. 209. Moreover, the ALJ noted that the records do not reveal any significant change in Plaintiff's condition, such as worsening, in August 2006, the alleged onset date. Tr. 209. Given that Plaintiff was able to work with mental impairments, the ALJ determined that Plaintiff's symptoms were not disabling as alleged. This was a clear and convincing reason to question Plaintiff's credibility.

*4. Lack of Treatment*

The ALJ noted in the prior decision that Plaintiff failed to comply with treatment for mental impairments, suggesting the impairments are not as severe as alleged. Tr. 209. Medical treatment to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. § 416.929(c)(3)(iv)-(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). Here, for instance, the ALJ noted Plaintiff was discharged from therapy in mid-2009 following multiple no-shows and cancellations. Tr. 209 (citing Tr. 541) (on August 18, 2009 Derrick Conley, MSW, noted Plaintiff had not returned to

treatment and will not return my phone calls; Plaintiff was discharged from mental

health treatment).  The ALJ further found that Plaintiff was again discharged from

treatment.  In September 2010, Regan Eberhart, LCSW, noted Plaintiff had

multiple no shows and cancellations and had not returned; Plaintiff was again

discharged from treatment.  Tr. 209 (citing Tr. 517).  This is a clear and convincing

reason for finding Plaintiff's symptom complaints less credible.

Plaintiff casts her failure to comply with treatment and other behaviors as

avoidant behavior that she alleges is part of her illness.  ECF No. 19 at 13-15.  The

ALJ did not adopt this interpretation of the evidence.  Significantly, the ALJ

pointed out that at least one aspect of Plaintiff's avoidant behavior with regard to

therapy was her reported concern that if she engaged in therapy she would be

denied disability benefits.  Tr. 28 (citing Tr. 963).  The ALJ found that on January

31, 2013, Plaintiff told treating therapist Mr. Wenger of her struggle with engaging

in therapy partly due to her fears of being denied SSA and losing this source of

support.  Tr. 28 (citing Tr. 963).  Thus, Plaintiff admitted she struggled to engage

in therapy because she did not want to be denied benefits.  The ALJ certainly may

consider motivation and the issue of secondary gain in rejecting symptom

testimony.  *Hill v. Astrue*, No. C07-5297BHS-KLS, 2008 WL 2782907, at *17

(W.D. Wash. July 15, 2008) (citing *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.

1998); *Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir.

1  1992)).  Here, the ALJ pointed to evidence in the record supporting a secondary

2  gain motive for Plaintiff's lack of compliance with treatment, that is, that Plaintiff

3  was giving less than full effort in order to obtain benefits.  This was another clear

4  and convincing reason for finding Plaintiff's symptoms less credible.

5        Plaintiff contends the ALJ found her less than credible based upon her

6  physical activity, but this is inaccurate.  ECF No. 19 at 9-11.  As noted, the ALJ

7  considered all of Plaintiff's varied activities when she determined that they are

8  inconsistent with claimed disabling limitations.  For the reasons the Court

9  previously articulated, Plaintiff's argument that the credibility assessment is flawed

10  lacks merit.  Similarly, Plaintiff contends the ALJ erred when she found Plaintiff's

11  symptom testimony was unsupported by her medical records because, Plaintiff

12  contends, the ALJ erroneously relied on isolated incidents of improvement to

13  discredit her symptom claims.  ECF No. 19 at 12-14.  Plaintiff does not directly

14  address the inconsistencies discussed by the ALJ.  The Court has concluded the

15  ALJ's findings are reasonable and supported by the evidence.  In essence, Plaintiff

16  asks the Court to reweigh the evidence.  However, the ALJ's interpretation of the

17  evidence is rational.  Since the evidence here is perhaps susceptible to more than

18  one rational interpretation, the ALJ's conclusion must be upheld.  *See Burch*, 400

19  F.3d 676, 679 (9th Cir. 2005).

20

In sum, this Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for the credibility finding.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the medical opinions of Paul Schmitt, M.D., Jean Crane, M.D., John Sand, M.D., and Robert Merkel, PAC, with respect to Plaintiff's alleged physical limitations. ECF No. 19 at 15-20.

*1. Dr. Schmitt and Dr. Crane*

In February 2009 treating physician Dr. Schmitt opined Plaintiff suffered from morbid obesity, varicose veins and depression, and could perform sedentary work up to 30 hours per week. Tr. 28 (citing Tr. 831-32). The ALJ rejected Dr. Schmitt's limitation of working 30 hours or less per week. Tr. 28 (citing Tr. 831-32). In November 2009, treating physician Dr. Crane opined Plaintiff could perform sedentary work but was limited to working 1 to 10 hours per week due to morbid obesity. Tr. 825. The ALJ also rejected Dr. Crane's limitation to less than full time work. Tr. 28.

Because Dr. Schmitt's and Dr. Crane's opinions were contradicted by Dr. Stevick,[8] Tr. 186-99, the ALJ was required to provide specific and legitimate

_____

[8] In August 2011, reviewing physician Drew Stevick, M.D., opined Plaintiff was capable of performing a range of light work. Tr. 210 (citing Tr. 189-99). The ALJ

reasons for rejecting Dr. Schmitt's and Dr. Crane's opinions. *Bayliss,* 427 F.3d at

1216.

The ALJ rejected both Dr. Schmitt's and Dr. Crane's limitation to part-time

work based on the longitudinal record. An ALJ may discredit a treating

physician's opinions that are unsupported by the record as a whole or by objective

medical findings. *Batson*, 359 F.3d at 1195. The ALJ credited reviewing

physician Dr. Stevick's opinion that Plaintiff was capable of light work and was

not limited to working part-time. Tr. 210; *see* Tr. 189-93 (Dr. Stevick opined

Plaintiff could perform a range of light work and was not disabled). Tr. 199. The

opinion of a nonexamining physician may serve as substantial evidence if it is

supported by other evidence in the record and is consistent with it. *Andrews v.

Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).

The record supports the ALJ's finding. For instance, in the current decision,

the ALJ found treatment provider Paula Lins, PAC noted in March 2013 that

Plaintiff was quite excited and in no distress. Tr. 21 (citing Tr. 858). The ALJ

further found that at a post-partum appointment in November 2013, Ms. Lins noted

_____

gave this opinion significant weight. Tr. 210; *see also* Tr. 25 (in the current

decision, the ALJ accepted Dr. Stevick's finding Plaintiff suffered sprains/strains

and obesity) (citing Tr. 186).

1  Plaintiff was pleasant, in no distress, and reported she rarely used pain

2  medications; Ms. Lins further noted Plaintiff was doing extremely well.  Tr. 21

3  (citing Tr. 852).  The ALJ noted that at a post-partum exam in January 2014,

4  treating physician John Sand, M.D., noted Plaintiff was alert, oriented and

5  pleasant.  Tr. 21 (citing Tr. 851).  In March 2014, treating physician Sara Cate,

6  M.D., noted Plaintiff was using a fitness app to lose weight, Plaintiff reported that

7  her exercise program was fun and she was going to the zoo in Seattle that day.  Tr.

8  21-22 (citing Tr. 882-83).  This was a specific, legitimate reason to give limited

9  weight to Dr. Schmitt's and Dr. Crane's opinion Plaintiff was limited to less than

10  full time work.

11      Next, the ALJ gave Dr. Schmitt's and Dr. Crane's opinions limited weight

12  because they were inconsistent with Plaintiff's activities.  Tr. 28.  An ALJ may

13  discount a medical opinion that is inconsistent with a claimant's reported

14  functioning.  *See Morgan*, 169 F.3d at 601-02.  As discussed, the ALJ found

15  Plaintiff engaged in a wide range of activities.  The ALJ found, for example,

16  Plaintiff traveled to Seattle, Tr. 21-22 (citing Tr. 882-83), cared for her seven-year

17  old and five-month old children as a single parent, Tr. 27 (citing Tr. 83, 86), took

18  her children to the park, Tr. 28 (citing Tr. 88), cooked, cleaned her home, dated,

19  shopped and visited friends and family.  Tr. 27 (citing Tr. 87-89).  The ALJ

20

1  provided a specific and legitimate reason to give Dr. Schmitt's and Dr. Crane's

2  opinions limited weight.

3      *3. Dr. Sand*

4      In January 2014, treating physician Dr. Sand opined Plaintiff "would qualify

5  for disability related to morbid obesity and water exercise on that basis."  Tr. 851.

6  The ALJ gave Dr. Sand's opinion little weight.  Because Dr. Sand's opinion was

7  contradicted by Dr. Stevick, Tr. 186-99, the ALJ was required to give provide

8  specific and legitimate reasons for rejecting Dr. Sand's opinion.  *Bayliss*, 427 F.3d

9  at 1216.

10     First, the ALJ found Dr. Sand's opinion was contradicted by the medical

11 record.  Tr. 28.  An ALJ may discredit a treating physician's opinions that are

12 unsupported by the record as a whole or by objective medical findings.  *Batson,*

13 359 F.3d at 1195.  Here, the ALJ noted, for instance, that Plaintiff had recently

14 given birth (in October 2013) at the time of Dr. Sand's opinion, January 9, 20104.

15 Tr. 28 (citing Tr. 851).  The ALJ further pointed out that subsequent mental health

16 records showed Plaintiff's energy and activity levels improved as she moved out of

17 the postpartum period and as she lost weight.  Tr. 28.  In addition, the ALJ pointed

18 out that Dr. Sand did not specify Plaintiff's functional limitations.  Tr. 28 (citing

19 Tr. 851).  The Court does not discern any error by the ALJ in failing to accept Dr.

20 Sand's opinion, because he does not assess any functional limitations.  *See, e.g.,*

*Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").  Last, the ALJ found Dr. Sand's opinion is inconsistent with Plaintiff's activities.  Tr. 28.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan,* 169 F.3d at 601-02.  As noted, the ALJ found Plaintiff's wide range of activities was inconsistent with disabling limitations.  In noting the inconsistency with the record as a whole, lack of identified functional limitations, and inconsistency with Plaintiff's reported functioning, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Sand's opinion.

### 4. Robert Merkel, PAC

In June 2007, treatment provider Mr. Merkel opined Plaintiff could not sit for extended periods of time and could perform sedentary work but was limited to working one to ten hours per week.  Tr. 28 (citing Tr. 787-88).

As a non-physician, Mr. Merkel is an "other source" under the regulations. 20 C.F.R. § 404.1513(d) (2013).  Thus, the ALJ was required to cite germane reasons for rejecting his opinion.  *See Dodrill*, 12 F.3d at 919.

As with Dr. Schmitt and Dr. Crane, the ALJ rejected Mr. Merkel's assessment that limited Plaintiff to less than full time work because it was inconsistent with the longitudinal record, including Plaintiff's treatment record, and with the wide variety of activities Plaintiff reported. Tr. 28. These were germane reasons to give Mr. Merkel's opinion minimal weight.

Plaintiff contends generally that the ALJ erred when she "failed to consider the consistency of these opinions." ECF No. 19 at 16. However, as indicated, the ALJ's interpretation of the evidence was reasonable. Since the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679.

Plaintiff further contends the ALJ erred in assessing these opinions by relying on the Appeals Council because "that portion of the analysis [relating to an RFC for less than full time work] was not challenged by the Appeals Council." ECF No. 19 at 17 (citing Tr. 28). However, even if Plaintiff's contention was correct, any error is harmless because, as discussed, the ALJ nonetheless provided specific and legitimate, and germane, reasons supported by substantial evidence for discrediting these opinions that Plaintiff is limited to less than full time work.

Second, Plaintiff contends the ALJ failed to properly evaluate the opinions of mental health professionals Steven Warn, M.A., Brett Wenger, M.S., and Aaron Burdge, Ph.D. ECF No. 19 at 18, regarding Plaintiff's mental limitations. The

1    Court has previously addressed the opinions of examining psychologist Dr. Burdge

2    and treating therapist Mr. Wenger.

3        *5. Mr. Warn*

4        In March 2012, treating therapist Steven Warn[9] opined Plaintiff was severely

5    limited in social settings due to anxiety and depression.  Tr. 28-29 (citing Tr. 841).

6    Mr. Warn further opined that extreme traumatic events connected with Plaintiff's

7    workplace as a teenager left her significantly impaired in the following areas:

8    regular attendance, being on time, and relationships with male authority figures.

9    Tr. 29 (citing Tr. 841).  Mr. Warn stated Plaintiff had chronic feelings of fear and

10   inadequacy associated with learning new tasks and being in new circumstances as

11   evidenced by extreme avoidance.  Mr. Warn assessed marked to severe limitations

12   in several areas of work related functioning.  Tr. 29 (citing Tr. 839-41).  Mr. Warn

13   further opined Plaintiff was not significantly limited in the ability to remember

14   locations and work like procedures, and that she was not significantly limited in

15   the ability to understand and remember very short and simple instructions,

16   understand and remember detailed instructions, carry out very short and simple

17   instructions and maintain socially appropriate behavior.  Tr. 29 (citing Tr. 839-40).

18   The ALJ discounted Mr. Warn's assessed dire limitations.  Tr. 30.

19   _____

20   [9] Mr. Warn was Plaintiff's therapist prior to Mr. Wenger.  Tr. 28.

1    As a non-physician, Mr. Warn is an "other source" under the regulations.  20

2  C.F.R. § 404.1513(d) (2013).  Thus, the ALJ was required to provide germane

3  reasons for rejecting his opinion.  *See Dodrill*, 12 F.3d at 919.

4    The ALJ rejected Mr. Warn's more dire assessed limitations because his

5  opinion is inconsistent with the record as a whole and is based on Plaintiff's

6  discredited self-report.  Tr. 29.  Here, the ALJ noted, for example, Plaintiff has not

7  demonstrated extreme avoidance.  Tr. 30 (citing Tr. 841); *see, e.g.,* Tr. 27 (citing

8  Tr. 87-89 (Plaintiff testified she drove fairly long distances, went to friends' homes

9  and went to the zoo in Seattle), all indicating a lack of extreme avoidance.  Next,

10  the ALJ observed Plaintiff is not extremely limited in social settings, further

11  contradicting Mr. Warn's opinion.  Tr. 30.  For example, in March 2011, Plaintiff

12  told examining source Ms. Cox that she attended social events, despite limitations,

13  Tr. 206 (citing Tr. 455), and in September 2011, Plaintiff reported she shopped

14  every week or two, took her son to school and to the park, and visited friends as

15  well as her mother.  Tr. 206 (citing Tr. 51-53, 390-91).  The record as a whole does

16  not support the dire limitations assessed by Mr. Warn.  This was a germane reason

17  to give Mr. Warn's opinion limited weight.  Plaintiff fails to show that the ALJ's

18  reasons for rejecting "other source" opinions were not germane.

19

20

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 19) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 23) is **GRANTED.**

3.  The District Court Executive is directed to file this Order, enter **JUDGMENT FOR DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

DATED this September 30, 2017.

<u>s/*Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE